MOSES WANZER AND JABEZ HARRISON, APPELLANTS, v. BENNETT R. AND J. H. TRULY.

Where a promissory note was given, in Mississippi, for the purchase of slaves, the title of the vendor of which afterwards proved to be defective, but in the mean time a foreign creditor of the vendor had laid an attachment in the hands of the vendee, for the amount of the promissory note, and obtained judgment against him as garnishee, the purchaser of the slaves should be credited upon the judgment against him, with the value of the slaves at the time when they were taken away from him, and the damages, costs, and expenses actually paid upon the decrees of the court of chancery in Mississippi.

THIS was an appeal from the circuit court of the United States for the southern district of Mississippi.

The facts of the case are stated in the opinion of the court.

It was argued by *Mr. Coxe*, for the appellants, and by *Mr Brent* and *Mr. May*, for the appellees.

Mr. Justice CAMPBELL delivered the opinion of the court.

The appellee (B. R. Truly) purchased of J. R. Herbert, in 1836, in Mississippi, five slaves, for whom he gave two notes, one of which for $3,575, was payable in March, 1838, at a banking-house in Brandon, with ten per cent. interest till paid. Another note for the same sum has been collected. During the year 1837, the appellants recovered a judgment in the circuit court against Herbert, who had absconded in insolvent circumstances. In 1839, a process of garnishment was served upon the appellee before named, who acknowledged the existence of this note, and a judgment was rendered against him. An execution issued, a levy was made, a forthcoming bond was taken,

and a forfeiture of it returned; upon this bond, J. H. Truly was a surety. In 1840, an injunction was obtained by the appellees, upon the allegation (*inter alia*) that they had heard that the slaves, which form the consideration of the notes, were the property of certain minor children in Alabama, whose guardian had fraudulently removed and sold them to Herbert. This bill was before this court and was dismissed. 5 Howard, S. C. R. 141.

While the suit was in this court, the minor children referred to, instituted suits in the court of chancery in Mississippi, (by sequestrating the property,) against the appellee or his assigns, and which resulted, during the progress of the present suit, in the recovery of two of the slaves, and nine tenths interest in a third, with the damages for their loss of service.

The original bill was filed in the present suit, in anticipation of this result, and alleges the death of Herbert and his vendor, (Nicholson,) in Texas, insolvent; and that the appellees were willing to release their claim on the slaves as derived from them, and surrender the defence of the suits to the appellants, and call upon them to take their place. The fact of the recoveries subsequently is brought to the notice of the court through supplemental bills. The circuit court decreed a perpetual injunction in favor of the appellees. The averment of the outstanding paramount title in the wards of Nicholson, and which the appellees had only heard of from common report, which appeared in the former suit, was disposed of by this court as insufficient, for that the appellees then "retained possession of the property without a threat of molestation."

The rule of the courts of Mississippi, as well as of this court, is, that, except in special cases, a vendee in possession cannot, at law or in equity, contest the payment of the purchase-money stipulated in a contract of sale, by an alleged defect of title, but reliance must be placed on the covenants it cont ins.

Gilpin *v.* Smith, 11 S. and M. 109; Dennis *v.* Heath, Ibid. 206; 2 Wheat. 13; 3 Pet. 310; 3 Porter, 127; 19 John. 77.

The disturbance of the possession by the orders and process of the court of chancery, the imminence of the danger from the title propounded in those suits, and the insolvency and death of the warrantors, were facts which authorized the circuit court to take equitable cognizance of the present complaint of the appellees, and to administer relief. The rule of the civil law, that the price of the sale of real property cannot be recovered by the vendor if the vendee has been disturbed in his possession by prior incumbrances or paramount titles, or has just grounds for apprehension on that account, (Pothier de Vente, § 280,) is the rule of chancery where there has been fraud, on where the

covenants of warranty are inadequate to the protection of the vendee by reason of the insolvency of the vendor.

In Bumpus v. Platner, 1 John. Ch. R. 213, Chancellor Kent said: " I consider an eviction at law an indispensable part of the claim to relief here, on the mere ground of a failure of consideration." And in Abbott v. Allen, 2 John. Ch. R. 519, he said: " If there be no fraud in the case, the purchaser must resort to his covenants if he apprehends a failure or a defect of title, and wishes relief before eviction."

But in the last case he suggests, " that existing incumbrances which appeared to admit of no dispute," or " where an adverse title is put forward," " or an adverse proceeding threatened," might support an injunction till the title was ascertained at law. And in Johnson v. Gere, 2 John. Ch. R. 547, he administered relief in accordance with these suggestions. A learned successor of this eminent jurist, with these cases before him, determined that when " the covenants have been actually broken, and the grantor is insolvent, a court of equity may restrain him from proceeding to collect the whole amount of the purchase-money, and may offset the damages occasioned by the breach of the covenants of seisin or warranty, against such unpaid purchase-money. Woodruff v. Bunce, 9 Paige, 443.

And this conclusion is supported by well considered adjudications in other courts of the States. 2 Dana, 276; 1 Ib. 303; 5 Leigh, 39, 607; 8 Ala. Rep. 920; 1 Black. 384; Carver v. Miller, 10 Ala. Rep.

The question arises whether the equity we have considered, of the vendee to protection from the insolvency of the vendor, has been modified or defeated by the pursuit of the attaching creditor in the circuit court. The proceeding by garnishment is designed to subject a debt due to the defendant, to the payment of the demand of his creditor, by investing the creditor with a judicial power to collect and apply the amount due. The claim of the attaching creditor against the defendant is only extinguished by a satisfaction of his demand by the garnishee. The garnishee is entitled to make at law legal defences, and his equities must be sought in a court of chancery. 17 Ala. 455; 5 Met. 263; 2 Wash. C. C. R. 488.

The statutes of Mississippi do not assign any extraordinary effect to the judgment condemning the debt in the hands of the garnishee, nor do they enlarge the rights of the attaching creditor beyond those of any other assignee of a *chose in action.* The equity of the vendee to be indemnified from the purchase-money in his hands, for a breach of the covenants of warranty by an insolvent vendor, originates in the contract, and inheres

to it so long as any part of it is executory. The equity of the attaching creditor does not arise in the contract, and is subsequent to its formation. In claiming the benefit of the fund, he renders no service to the vendee, and releases none of his rights against the vendor. He may fail in realizing hopes or anticipations by the defeat of his suit against the garnishee, but his judgment against his debtor remains in operation. Where a party contracts specifically for property, pays money, acquires a legal title without notice of an equity, a court of chancery will not disturb his legal position. But there is no principle upon which a court of chancery is required to imply that a proceeding by a defendant, through the intervention of his creditor, to subject a legal demand, unconnected with any equity—a demand which equity would not permit him to collect in his own name, in consequence of the failure of consideration, shall divest the garnishee of equitable claims and defences.

The rule of law is accurately stated by Vice-Chancellor Wigram, who says: " That a creditor, under his judgment, might take in execution all that belongs to his debtor, and nothing more. He stands in the place of his debtor. He is a purchaser who, by the terms of his conveyance, takes, subject to any liability under which the debtor himself held the property." Whitworth v. Gaugain, 3 Hare, 416; s. c. 1 Cr. & Phil. 325; Langton v. Horton, 1 Hare, 549; Hutch. Dig. Miss. Stat. 912, § 8.

The most restricted view of the doctrine of these cases is, that the equitable rights of the garnishee remain unaffected by the judgment, or the proceedings under the judgment, till the execution is executed, unless the garnishee is accessory to some act, or guilty of some omission or laches, by which their efficacy is impaired. 1 McN. &. G. 437; 8 Ala. Rep. 867.

When the execution is executed, the claim of the attaching creditor upon the defendant in the suit (his original debtor) is satisfied. He has purchased thereby the issues of his garnishment process, for an adequate consideration, and could not, consequently, be called to refund at any future time. This view of the rights of the vendee is sustained by Chancellor Walworth, in Sanford v. McLean, 3 Paige, 117, where the effect of a judgment is stated, and where a purchaser under it is said to be subject to every equitable claim thereon which was prior in point of time to the judgment, of which he had notice at or before the sale of the property." In many of the States the policy has been adopted of placing the claims of judgment creditors upon the same footing as purchasers in reference to unrecorded conveyances, and of assigning to creditors' liens a higher rank than they occupy in the general system of equity jurisprudence; but, in the absence of such a policy. the rules we have quoted must determine their dignity.

The appellees cannot be charged with any laches, or conduct calculated to deceive or mislead the attaching creditor, but the only complaint of them is, that they insisted upon their title to relief prematurely, and with too much pertinacity. Whatever effect may be visited upon such a course of conduct, we know of no rule that would authorize the forfeiture of their claim to relief. We concur, therefore, in the leading principle upon which the cause was determined in the circuit court. But we do not agree with the court in their allowance of a perpetual injunction without requiring an account.

The contract of the appellee was for five slaves, for whom only one half the price has been paid. The whole of them were possessed for many years, when two and nine tenths of another were recovered, with damages for the detention of two.

The damages recovered were compromised, and only a portion of them paid. No notice was given to the appellants of the offers or acceptance of the compromise.

The appellants are complainants in equity, seeking to enforce a covenant of indemnity, and must receive relief upon the principles on which the court habitually extends it; that is, upon the principle of doing equity, upon a principle of compensation for the injury sustained. This is the rule stated in McGinnis *v.* Noble, 7 Watts & S. 454, and applied in a similar case to this, of Jones *v.* Lightfoot, 10 Ala. R. 17. The appellees, upon their eviction, are entitled to the value of the slaves they have lost at the date of the decrees, and the damages, costs, and expenses, actually paid upon the decrees of the court of chancery in Mississippi.

We direct the reversal of the decree of the circuit court, and remand the cause, with directions that these amounts be ascertained, and the judgment at law in the circuit court against the appellees and their sureties be credited with this sum, as of that date, and that the costs of this court be paid by the appellees.

Mr. Chief Justice TANEY, Mr. Justice McLEAN, and Mr. Justice DANIEL, dissented.

Mr. Justice DANIEL.

I dissent from the decision by the majority of the court in this case, and in expressing my disagreement, I have felt no greater perplexity in reconciling that decision with every principle of justice, than in reconciling it with itself. For, to my apprehension, it clearly appears that if there ever was a decision which could be characterized as *felo de se*, it is precisely the decision made in this case.

This controversy had its commencement by a proceeding

familiarly known and practised in several of the States, and particularly in the south and southwest, usually denominated a foreign attachment. By this proceeding a person whose debtor may have absconded, or who has no visible property which can be reached directly by legal process, is authorized to attach in the hands of a third person who may be indebted to the debtor of the attaching party, an amount equal to the demand due to the latter. Under such proceeding, the plaintiff in the attachment is placed in the precise position of his debtor, with respect to the defendant, and can either legally or equitably recover of him nothing more than what was due from the defendant to the debtor of the plaintiff. In other words, the plaintiff stands affected and is bound by every legal and equitable right appertaining to the parties of whose transactions and relation to each other he seeks to avail himself. Avoiding a detail of the facts and proceedings had in this cause, further than is necessary to its correct comprehension, those facts and proceedings are prominently and simply these. That in the year 1836, the appellant, Bennett R. Truly, purchased five slaves of one John R. Herbert, and for the purchase-money for those slaves executed two promissory notes of $3,575 each. That Herbert, shortly after the sale and purchase of these slaves, removed to Texas, where he died insolvent. That Wanzer and Harrison, being creditors by judgment of this insolvent person, Herbert, sued out an attachment against Truly, and obtained a judgment thereon for the sum of $3,575, the amount of one of the notes given for the purchase of the slaves, the other note for the like amount having been paid.

That suits had been instituted by certain persons whose guardian, during their minority, had run off with those slaves, from the State of Alabama, and sold them to Herbert, of whom they were purchased by Truly, who was ignorant, when he purchased, of any defect in the title to them. That in the suits brought for these slaves, a recovery had taken place in behalf of the true owners, and that the slaves had been surrendered by Truly, who had also, by a compromise with the agent of the persons who had obtained a decree for the slaves, delivered to said agent four other slaves, in satisfaction of the hires of those slaves, and of the costs incurred by their true owners' prosecuting their title to them.

Upon the foregoing facts this court have by their decision affirmed that Herbert, having had no title to the slaves, could convey none to his vendee, and that the slaves sold by him having constituted the only consideration for the notes given by Truly, by the recovery of those slaves by title paramount that consideration had failed or been taken away, and therefore there

remained no foundation for a claim upon Truly, either on behalf of Herbert or of any person occupying his precise position.

Had the decision of this court terminated here, or at a conclusion seemingly inevitable from the principles and terms of that decision, namely: the absolute denial to Herbert, or to Wanzer and Harrison, representing Herbert, of any description of right under the contract with Truly, that decision would have been reconcilable with justice, and consistent with itself. But this court goes on to argue that, from the evidence in the record, it appears that Truly has not responded to any regular and specific rate or demands for the hire of the slaves, whilst they were in his possession or under his control, and therefore there should be an account taken in this cause, showing on the one hand the interest upon the claim asserted through Herbert, and on the other the amount of the hires of the slaves, regularly and specifically computed, with the view, (if indeed such view is comprehensible for any conceivable reason,) that, should there turn out to be an excess of hires beyond the interest upon the claim asserted through Herbert, that excess may be applied to the benefit of Wanzer and Harrison.

But the error of this direction by the court is exposed by the following inquiries. Suppose not one cent of the hires of these slaves has been paid, to whom do those hires belong? To whom would Truly be accountable for them? He would be accountable, surely, to those to whom the subjects constituting the source of those hires belonged, and not to the purloiner of their property, nor to persons deducing title from such wrong-doers. Nay, the payment to the latter of any portion of those hires would not exempt the payer from reclamation from the true owners.

Then let it be supposed that Truly may have compromised with the true owners the claim for hires, either by the payment of an amount less than their actual or estimated aggregate, or by the transfer of property in kind, (slaves, for instance, as it appears were delivered to the true owners,) will this court undertake to deny to those parties the right to compromise their own interests? It may have been that the delivery of the four slaves, in satisfaction for the hires, was more satisfactory and more advantageous to the persons accepting them, than any other arrangement which could have been made. But should these rightful claimants have been willing to surrender any portion of their interests, or from motives wise or unwise, should have relinquished the whole of them, could such a proceeding have given validity to the fraudulent pretensions of Herbert, or of those who seek to profit by his dishonesty? The decision of this court having declared the contract with Herbert void for an entire want or failure of consideration, unless the maxim *ex*

*nihilo nihil fit* shall be reversed, and this court shall affirm that something can arise from nothing, it passes my powers to perceive how any right, legal or equitable, can spring from this contract with Herbert, thus declared to be void, and that alleged right, too, existing in one who, in legal intendment, is Herbert himself. If the contract with Herbert is valid, then the judgment upon the attachment should be enforced to its full extent; if it was invalid, then in the same extent it should be repudiated; but this court, while it condemns the contract itself, attempts to deduce from it and to enforce consequences which necessarily imply its validity, and which can result only from regarding it as valid. In this aspect of the decision, I cannot but regard it as injurious to the appellees, as irreconcilable with sound principles of logic or of law, as irreconcilable with itself. I forbear here any remark as to the periods at which the grounds of defence in the court below came into existence, or were tangible and practicable, or as to the manner in which they were relied on, in opposition to the demand against the appellee. These are matters entirely distinct from the essential merits of those grounds of defence, and any examination of them seems unnecessary, or rather to be excluded, by the decision here, upon the character of the defence itself.

### Order.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the southern district of Mississip , and was argued by counsel. On consideration whereof, it is now here ordered, adjudged, and decreed by this court, that the decree of the said circuit court in this cause be and the same is hereby reversed, with costs, and that this cause be and the same is hereby remanded to the said circuit court, for further proceedings to be had therein, in conformity to the opinion of this court, and as to law and justice shall appertain.