PATRICK McLAUGHLIN, PLAINTIFF IN ERROR, *v.* JAMES SWANN AND JOHN S. GITTINGS, GARNISHEES OF THE CHESAPEAKE AND OHIO CANAL COMPANY.[*]

The attachment law of Maryland allows an attachment by way of execution to be issued upon a judgment and levied upon the credits (*inter alia*) of the defendant.

Where an attachment of this nature was laid in the hands of garnishees who were trustees, and it appeared that, after performing the trust, there was a balance in their hands due to the defendant, the attachment will bind this balance.

The defendant might have brought an action to recover it, and wherever he can do this, the fund is liable to be attached.

A bill filed in the court of chancery by another creditor against the garnishees and the defendant, filed after the laying of the attachment, and the opinion and decree of the chancellor thereon, do not change the rights of the plaintiff in the attachment. The decree was passed without prejudice to his rights. If these things were made evidence by consent in the court below, it does not so appear in the bill of exceptions.

Whatever legal or equitable defences the garnishees might have set up in an action brought against them by the defendant to recover the balance in their hands, can be set up, by bill of interpleader or otherwise, against the plaintiff in the attachment.

·The different modes of presenting these legal and equitable defences in different states referred to.

. THIS case was brought up by writ of error from the circuit court of the United States, for the District of Maryland.

The case is stated in the opinion of the court.

The instructions given by the circuit court to the jury, and which were excepted to by the plaintiff, were as follows:—

And the court directed the jury that the plaintiff was not entitled to recover, and their verdict must be for the defendants:

. 1. Because the rights of the parties claiming as *cestui que trusts,* under the deed of April 15, 1840; and the rights of those claiming an interest in the surplus after the *cestui que trusts* are satisfied, cannot be adjusted and determined in the proceeding

---

[*] Mr. Chief Justice TANEY was prevented by sickness from taking his seat on the bench, at the present term, until the 4th of February, and was not present when this case was argued and decided in this court.

by attachment against the trustees in a court of law, and there is no evidence that any specified sum ascertained by the accounts of the trustees, or by judicial decision, was due to the Chesapeake and Ohio Canal Company at the time this attachment was laid, or at any time since, after satisfying all legal or equitable claims on the fund placed in the hands of the trustees.

2. Because there is no evidence that anything remained in the hands of the trustees, after satisfying the trust mentioned in the deed, more than sufficient to satisfy the claim of the Alexandria Canal Company and others, having prior and superior claims on the fund to the plaintiff in this attachment.

3. The plaintiff having become a party to the proceedings in the chancery court of Maryland, in the suit in which this fund was in litigation, and the trustees in the fund being all before the court, he is concluded by its decision while the decree remains in force.

It was argued in this court by *Mr. Davis*, for the plaintiff in error, and by *Mr. Campbell*, for the defendants.

*Mr. Davis* made the following points :—

1. That under the circumstance of this case, the process of attachment was a proper process to reach, and affect any surplus in the hands of the trustees remaining after gratifying the trusts of the deed, and not needed to satisfy the demands of others having prior and superior claims on the fund.

2. That there was evidence of a large surplus existing in the hands of the trustees, after satisfying the trusts of the deed, the claim of the Bank of Potomac, and all others superior and prior to the claim of the present plaintiff.

3. That the decree of the court of chancery of Maryland alluded to, cannot prejudice the plaintiff's right to recover, if it can be shown that at the time of passing the decree, the trustees had in hand a surplus, which was liable to be affected by process of attachment.

Under the first head he cited 5 Har. & John. 312–5 ; 3 Har. & McH. 535, and maintained that every equitable interest in Maryland, except a trust in process of execution, is liable to be attached under the act of 1715. See act of 1831, c. 321, which is a declaratory act.

The trust had expired in this case, and an action for money had and received could have been maintained against the trustees.

*Mr. Campbell* contended, that when the attachment was issued, the whole surplus was in controversy between the Chesapeake Bank and the Bank of Potomac.

How could the court below settle the conflict between these rival claimants, neither of them before it, or weigh in legal scales their respective equities ?

Case *v.* Roberts, 3 Eng. Comm. Law, 172.  The action for money had and received, must not be turned into a bill of equity for the purpose of discovery.  While the matter remains in account and is charged with the specific trust, the action for money had and received will not lie.  Roper *v.* Holland, 30 Eng. Comm. Law, 37; Edwards *v.* Bates, 49 Ib. 598; Pardoe *v.* Price, 13 Mees. & Welsby, 282, 283; Bartlett *v.* Dimmond, 14 Ib. 49; Tiernan *v.* Jackson, 5 Pet. 597; Duvall *v.* Craig, 2 Wheat. 56; Rathbone *v.* Stocking, 2 Barb. Sup. Ct. R. 135, and the cases referred to in the court's opinion.

The second instruction of the circuit court was correct, for the evidence showed that the surplus, after the redemption of the script, was all claimed by the Bank of Potomac and Chesapeake Bank.

McLaughlin was made a party to the proceeding in chancery and answered.  The reservation avails nothing under the circumstances.  This cause began in 1841, and was continued from term to term till 1851.  He might have claimed the surplus in chancery.  If he did not choose to assert his rights the decree must bind him.

Mr. Justice CURTIS delivered the opinion of the court.

This is a writ of error to the circuit court of the United States for the district of Maryland.

The plaintiff in error having recovered a judgment in that court against the Chesapeake and Ohio Canal Company, sued out a writ of foreign attachment against the lands and tenements, goods, chattels, and credits of that company, and on the 4th day of June, 1841, it was laid in the hands of James Swann and John S. Gittings.  The garnishees having appeared and answered certain interrogatories, pleaded that at the time of laying the attachment they had not any goods, chattels, or credits of the company in their hands, and upon the trial a bill of exceptions was taken, from which it appears that the plaintiff offered evidence tending to prove, that, by an indenture, bearing date on the 15th day of April, 1840, between the company of the first part, and the garnishees, together with William Gunton, (who, residing out of the district, was not served with process,) of the second part, the party of the first part transferred to the party of the second part, two hundred and forty-eight bonds of the State of Maryland, each for two hundred and fifty pounds sterling, in trust to pay, from the proceeds thereof, such promissory notes of the company, described in a schedule annexed to

the indenture, as should be presented to the trustees at the Chesapeake Bank in Baltimore, within six months from the date of the indenture; and at the end of the six months, to pay to the company any money, and to deliver to the company any of the bonds which might then remain in their hands, whether all the notes mentioned in the schedule should then be paid or not.

The plaintiff further offered evidence to prove, that Gittings, with the assent of the other trustees, sold the bonds prior to the 28th day of February, 1841, for the aggregate sum of $344,117$\frac{26}{100}$; and that the sums received by him for interest on the bonds amounted to $16,958$\frac{62}{100}$, amounting in the whole to the sum of $361,075$\frac{88}{100}$. The disbursements and payments made by the trustees in the execution of the trust, appeared to have been $324,825$\frac{18}{100}$, leaving a balance due from the trustees, after the complete execution of the trust declared in the indenture, of $36,250$\frac{70}{100}$.

Upon this state of facts, we think the plaintiff entitled to a verdict.

The trust was for the payment of specified debts, which should be presented to the trustees before a fixed day. The payments made, and the sums received in execution of the trust, were liquidated sums ascertained with entire precision. The trust was completely executed, and the balance remaining in the hands of the trustees was a sum certain.

Under these circumstances, an action at law for money had and received could be sustained by the canal company against the trustees, they not having sealed the deed.

In Case *v.* Roberts, (Holt's N. P. C. 500,) Burrough, J., states the rule on this subject to be: " If money is paid into the hands of a trustee for a specific purpose, it cannot be recovered in an action for money had and received, until that specific purpose is shown to be at an end. If the plaintiff show that the specific purpose has been satisfied, that it has absorbed a certain sum only, and left a balance, such balance (the trust being closed) becomes a clear and liquidated sum, for which an action will lie at law." This statement of the rule has been approved, and in conformity with it many cases decided. See, among others, English *v.* Blundell, 8 Car. & P. 332; Edwards *v.* Bates, 7 Man. & Gr. 590; Allen *v.* Impett, 8 Taunt. 263; Weston *v.* Barker, 12 Johns. R. 276.

This case, thus presented, comes within that rule; and as an action at law could have been sustained by the canal company to recover the liquidated balance remaining in the hands of the trustees, the plaintiff could subject that balance to the satisfaction of his judgment, by attaching it as a credit in the hands of the trustees.

But, in addition to the evidence above referred to, the bill of exceptions contains the following statement concerning evidence introduced by the defendants :—

" That on the 25th of June, 1841, a bill was filed in the court of chancery, in Maryland, against the said garnishees and the Chesapeake and Ohio Canal Company, and others, by the Bank of Potomac, claiming as assignee of the surplus which remained after satisfying the trusts under the deed of April, 1840, and praying an account and settlement of the trust, which bill is in the following words : It being agreed between the parties that the said bill and other portions of the pleadings or proceedings in that case, hereinafter mentioned to have been produced and read, shall be received in evidence and have the same effect as if the whole record was produced, and such pleadings or proceedings read from it."

Then follows a copy of the bill, of an opinion of the acting chancellor, and of the final decree in the cause. McLaughlin, the present plaintiff in error, is not made a party to this bill. How he came into the cause as a party does not appear. If by the amended bill, he ceased to be a party before the final decree, because that decree recites that the amended bill was dismissed by the complainants before the final submission of the cause to the chancellor. Nor does it appear for what purpose McLaughlin was made a party, or whether he at any time submitted his rights, as an attaching creditor, by a process out of the circuit court of the United States, to a court of the State of Maryland, in a suit in equity, begun after his attachment was laid. But it does not appear to be material to consider either of these particulars, because the final decree concludes with this clause :—

" And it is further adjudged, ordered, and decreed, that this cause be, and the same is hereby dismissed as against the defendant, Patrick McLaughlin, and this decree is passed without prejudice to the rights of the said McLaughlin against any and every of the parties to this suit."

Either because the chancellor deemed it improper to pass on his rights acquired by an attachment under process of a court of the United States, or for some other reason, he has made a decree, which in express terms leaves McLaughlin in all respects unaffected by that suit.

We think, also, that so much of the record of the chancery suit as is in this record, though it was properly read in evidence to prove that such proceedings were had, and such decree made, is not evidence of any facts found by the chancellor, either in his opinion or in the decree.

The bill having been dismissed as against him, and all his rights, as against any and every of the parties, expressly saved,

there has been no matter tried or adjudicated as between him and any other party, and he stands, in all respects, as if he had never been a party to the suit.

It was insisted at the argument, that the stipulation already extracted from the bill of exceptions made the chancellor's opinion evidence, as against McLaughlin, of the facts it finds. This was denied by the plaintiff's counsel; and, however probable we may think the inference, that the chancellor's opinion was treated as evidence by the circuit court, with the consent of the plaintiff, yet we cannot say this appears to us judicially, by the bill of exceptions. The stipulation only extends so far as to make the parts of the record, which were read, have the same effect as if the whole record had been put in. The whole record might have properly been put in, to prove what was done and decreed in that suit, *valeat quantum.* But when it appeared that, so far as respected the plaintiff and his rights, nothing was done or decreed, his rights in this suit could not be affected by anything appearing therein, or deducible therefrom. In our opinion, therefore, the case is presented to us upon the evidence, extraneous to the record of the state court. Upon that evidence, we think the jury would have been authorized and required to find for the plaintiff; and, consequently, that the instruction given in the court below, that their verdict must be for the defendants, was erroneous.

We express no opinion upon the defences supposed to arise out of the facts found in the opinion of the chancellor. If the facts, which may be proved in defence, on another trial, should amount to a legal defence to an action for money had and received, if brought by the Canal Company, they would also amount to a defence to this attachment. If they only show outstanding equities, in third persons, of such a character that a court of law cannot take notice of them, they must be availed of, if valid, by a bill brought by such third persons against McLaughlin, or by a bill of interpleader by the trustees. The attachment invests the plaintiff with the same right of action which belonged to the Canal Company; and no defence, which could not have been made at law to an action by the company, can be made to the attachment, which is but a substituted mode of pursuing the same right. Wanzer v. Truly, 17 How. 584. So far as respects equitable rights of set-off by the garnishee, a different rule has been followed in Massachusetts. Boston Type Co. v. Mortimer, 7 Pick. 166; Hathaway v. Russell, 16 Mass. 473; Green v. Nelson, 12 Met. 567. And, in the absence of an equitable jurisdiction in that State, there has been, until recently, no mode of giving effect to the equitable rights of the garnishee, or of third persons, save in the process of garnishment, or pos-

sibly by an action on the case in some instances. Foster v. Sinkler, 4 Mass. 450; Hawes v. Langton, 8 Pick. 67; Adams v. Cordis, 8 Pick. 260.

But, in other States, it has been held that only legal defences can be made to the attachment. Pennell v. Grubb, 13 Penn. R. 552; Taylor v. Gardner, 2 Wash. C. C. Rep. 488; Loftin v. Shackelford, 17 Alabama, 455; Edwards v. Delaplaine, 2 Harrington, 322; Watkins v. Field, 1 English, 391.

We are not aware that this subject has come under the examination of the courts of Maryland in any reported case. But in a State where the legal and equitable jurisdictions are distinct, and in a court of the United States, having full equity powers, we consider that a garnishee should stand as nearly as possible in the same position he would have occupied if sued at law by his creditor; and if he, or any third person, has equitable rights to the fund in his hands, they should be asserted in that jurisdiction which alone can suitably examine and completely protect them.

The judgment of the circuit court is to be reversed, and the cause remanded, with directions to issue a *venire facias de novo.*