Mr. Justice CAMPBELL
 

 delivered tbe opinion of tbe court.
 

 Tbe' plaintiffs below (Roots & Coe)- sued tbe defendants (McCullough et al.) in general indebitatus assumpsit, in tbe Circuit Court, for tbe price of a quantity of hams in tierces which they claim to have sold and delivered to them* The plaintiffs are merchants in Cincinnati, Ohio, who, on their own account, and as agents'fo’r Adams & Buckingham, of blew York, in November, 1853, contracted with Henry Lewis, of tbe same city, to malee advances upon bis consignments of bacon, pork, and similar articles of provisions, which these consignees were to dispose of, and, after reimbursing tbe .advances and expenses, were to appropriate tbe net profits in part to tbe payment of a .pre-existing debt due to those firms. The course of business was, to suffer Henry Lewis to prepare tbe articles for the market, and to superintend the. sales, under a condition of accounting for their proceeds to the consignees. Tbe advances were usually made upon tbe warehouse receipts of a firm of which'Lewis was a partner, generally before the property spe
 
 *351
 
 cified in them was in the warehouse. The receipts expressed articles which the warehouseman expected either to prepare or to procure otherwise, and the money advanced was generally intended to aid that object. To secure themselves- from the contingency of any failure in these anticipations, the plaintiffs Roots & Coe) sometimes exacted the guaranty of Samuel ewis, a brother of Henry Lewis. This generally took the form of a warehouse receipt made by him, corresponding to the others. ' The articles designated in the receipts of Samuel Lewis, it was understood, would be supplied by Henry — Samuel being unconnected with any business of this description on his own account.
 

 In April, 1854, Roots & Coe were the holders of a number of receipts of Samuel Lewis for provisions, which Henry Lewis was unable to supply. The plaintiffs (Roots & Coe) agreed, that if Samuel Lewis would secure the consignment of a quantity of hams, by executing a new receipt therefor, they would extend their advances to Henry Lewis until he could make the best disposition of them. This was assented to, and the con-' tract hereafter mentioned was made.
 

 Samuel Lewis had not interfered with the business of Henry; nor did he control the property which his receipts from time to time specified. The property was left in the charge of Henry Lewis, to be appropriated according to his contract with the plaintiffs, (Roots & Coe,) of which the receipt was treated as a guaranty. The receipts executed at this settlement bear date the 4th of April, 1854, and are as follows:
 

 “Received in store of Henry Lewis, and subject to the order of Roots & Coe, but not accountable for damages by fire, four hundred and fifteen hogsheads sugar-cured hams in pickle, containing nine hundred pounds net weight; said hams to be smoked and canvassed, within thirty days, and delivered to said Roots & Coe, or their order, said Roots & Coe being responsible for the smoking and canvassing the same; and it is further agreed between the parties, that when the above bam a are delivered to said Roots & Coe, then and in that case my former warehouse receipts for two thousand five hundred barrels of mess pork, four hundred barrels of lard, and one hundred thousand pounds of shoulders from the block, shall be given up and cancelled; but I am not responsible for smoking or canvassing the same, that being a matter between said Henry Lewis and Roots & Coe.
 

 (Signed) Samuel Lewis.”
 

 At the same time, Henry Lewis gave the following receipt:
 

 “"Whereas Roots & Coe hold Samuel Lewis’s warehouse.
 
 *352
 
 receipt of this date for four hundred and fifteen hogsheads sugar-cured hams in pickle, each hogshead containing nine hundred pounds net weight, to he delivered within thirty days: Now, I do hereby agree to smoke, canvass, yellow-wash, and pack the same, free of charge to Roots &-Coe; and also agree not to require Roots &,Coe to refund to me the freight on the same from Indianapolis to this place, being one hundred and fifty cents per hogshead, which I have paid, in consideration of having received an advance on the above-mentioned hams from Adams & Buckingham, through said Roots & Coe. But in case I should purchase and pay for the same within thirty days from this date, then Roots & Coe agree to refund the freight from Indianapolis to this point, being one dollar and fifty cents per hogshead. Heney Lewis.”
 

 At the time this contract was made, the property specified in it was not in store at Cincinnati, but a portion was delivered to the plaintiffs (Roots & Coe) the day after its date. The remainder came consigned to their order during that and the following month, and was deposited in the warehouse of Henry Lewis, under their directions; and Henry Lewis was employed to canvass, yellow-wash, brand, and pack in tierces the hams, ready for the market; for this, Roots & Coe were to pay Lewis his bill of charges as a further advance. "While the property was in this condition, a disagreement arose between Henry Lewis and Roots & Coe, relative to a deficiency in the weight of the hogsheads, and whether the warehouse receipt of Samuel Lewis amounted to a warranty of the weights. -
 

 In May and June, 1854, the defendants below purchased two hundred and twelve tierces of these hams, at a specific price. Roots & Coe and Henry Lewis respectively claim to have made this sale, and both were present when it was made.
 

 The money arising from the sale was designed for the former, and the sale was entered on their books, and there is strong evidence to the fact that the defendants promised to pay their bill for the hams in Juñe, 1854. But 'before the payment, Henry Lewis insisted upon a surrender of the warehouse receipts of Samuel Lewis; and that being refused, he directed the defendants to appropriate the price as a credit on the joint debt of Samuel Lewis and himself to them; and this was done by them accordingly.
 

 Upon the trial in the Circuit Court, the plaintiffs in error moved for fourteen distinct instructions to the jury, which the court declined to give, but gave in their stead the following charge:
 

 “1. If the jury shall find, from the evidence in this case,
 
 *353
 
 that the said two hundred and twelve tierces were part of the hams contained in the four hundred and fifteen hogsheads mentioned in the receipt of April 4, 1854; that they were sold by the said plaintiffs, in their own name, to ‘the said defend-, ants; ’ that at the time of the said sale the said hams belonged to the said plaintiffs, or that they had an interest in the same for advances or commissions, and authority as the agents of Adams & Buckingham to dispose of the same; and that said h'ams were , delivered to, and received by, said defendants, in pursuance of said sale, then the plaintiffs are entitled to recover the full amount or price of the said hams.
 

 “ 2. That although the jury may find from the evidence that, the said hams were sold to defendants by Henry Lewis, yet if they also find that at the date of said sale the said hams belonged to plaintiffs, or to Adams & Buckingham, for whom the plaintiffs acted as agents; and if the latter, that the plaintiffs had an interest in and control over the said hams, to cover advances and commissions; that defendants subsequently promised to pay plaintiffs the same, and that this suit was. instituted before the price of said hams had been paid by defendants to Henry Lewis, then and in that event the plaintiffs are entitled to recover.”
 

 To this charge McCullough and Culbertson excepted, as well as to the refusal of the instructions moved for, and assign these decisions as errors in this court. The written contract, of November, 1858, which arranged the terms and course- of business between the plaintiffs below (Roots & Coe) and Adams & Buckingham, their principal, with Henry Lewis, for the year 1854, confers on. the former a plenary power to dispose of the consignments to be made, for advances under that contract. The contract of April did not alter or modify this term in the engagement. Henry Lewis was then in arrears to them. He had involved his brother Samuel in engagements, as his surety, which he could not fulfil. This contract of April was a relief and an accommodation to the brothers. The license to Henry Lewis to prepare the provisions for market,, and to select the markets and purchasers, was an indulgence-, to him, and did not diminish the rights of Roots & Coe'in the property or their powers under the contract. "Whatever sales were made by him, were made as the agent of Roots & Coe,, and they were entitled to control the price. He was not in a> condition to dispute their title, and his authority to, the plaintiffs in error to appropriate the price as a credit upon, another demand was a fraud.upon the rights of Roots & Coe and Adams & Buckingham. (Zulueta v. Vincent, 12 L. and Eq., 145; Bott
 
 v.
 
 McCoy, 20 Ala., 578; Walcott
 
 v.
 
 Keith, 2 Fost. N. H.
 
 *354
 
 R., 196.) We think the cause was fairly submitted to the jury in the charge of the court. The instructions prayed for by the plaintiffs in error present several questions which will now be considered.
 

 They affirm, that if Samuel Lewis did not assent to the sale, nor waive his right to detain the property until his warehouse receipts were surrendered, and that Boots & Coe from time to time refused to surrender those receipts, and still control them, they cannot maintain an action for this money.
 

 But the existence of these facts does not authorize the defendants (McCullough et al.) to resist the payment of the price of property they had purchased, and their possession of which had not been disturbed. Samuel Lewis had no title to the property, nor any power to sell it, nor any claim on the price. At most, he had only a lien, which he might never claim to exert, and from which the purchasers have experienced no injury. (Holly
 
 v.
 
 Huggerford, 8 Pick., 73; Vibbard
 
 v.
 
 Johnson, 19 John., 77; Wanzer
 
 v.
 
 Truly, 17 How., 584.)
 

 ISFor can the purchasers aver that Henry Lewis had no intention' to act as the agent of Boots & Coe in making the sale, and in doing so he did not waive any right of Samuel Lewis, nor enlarge or impair the claim of Boots & Coe upon the property; but that he, and those claiming from him, are simply tort feasors, and that Boots & Coe cannot claim the entire purchase-money, because their title does not embrace the entire property and right to possession. The relations of Boots & Coe to Hemy Lewis were such that he cannot be deemed a tort feasor, except by their election. They are authorized to adopt his acts, and to claim the benefit of his contracts. He was their bailee, and is estopped to deny their title in any form. It is further insisted that the suit should have been instituted in the names oí Adams & Buckingham, and not in those of Boots
 
 &
 
 Coe. But the contracts for the consignment of the hams, as well as for their preparation for the market and their sale, were made in the names of those persons. They are interested in their result to the extent of their commissions, and their principals reside in another State from themselves. The authorities cited sustain their title to maintain this suit.
 

 Judgment affirmed.