# CHARLESTON.

## MITCHELL *v.* PENNY.

Submitted June 5, 1909. Decided January 25, 1910.

1. GUARDIAN AND WARD—*Termination of Relation without Settlement—Right of Ward to Enforce Settlement by Assumpsit.*

On the termination of a guardianship, without a settlement of the guardian's accounts, and ascertainment of the amount due from him, in some appropriate manner, an action of *assumpsit* cannot be invoked by the ward to enforce settlement of the accounts and payment of the amount remaining in the guardian's hands. (p 662).

2. SAME—*Continuance of Relation for Purposes of Settlement.*

For the purposes of settlement, the guardianship is deemed to continue after it has, in law, ceased. (p. 664).

Error to Circuit Court, Hancock County.

Action by Ida B. Mitchell and others against Malinda Penny. There was a directed verdict for defendant, and plaintiffs bring error.

*Affirmed.*

*O. S. Marshall* and *John Marshall,* for plaintiffs in error.

*E. A. Hart,* for defendant in error.

POFFENBARGER, JUDGE.

In an action of *assumpsit,* brought by Ida B. Mitchell and Geo. Mitchell, her husband, against Malinda Penny, for the recovery of money, due from the defendant to the female plaintiff, the circuit court of Hancock county, deeming the evidence, offered and adduced, variant from the declaration and the remedy inappropriate, refused to admit the evidence offered, and directed a verdict, and gave judgment, for the defendant.

The declaration contains only the common counts and the plaintiffs attempted to recover, upon it, a debt, arising out of a fiduciary relation, formerly, if not at present, subsisting between the defendant and the said Ida B. Mitchell. The former was a widow, and the latter a daughter of Wm. G. H. Blackwell, who died many years ago. After his death, the widow, having qualified as guardian for her children, received government pensions for them. After having so qualified, she married and removed from the state. What disposition she made of the pension money is not very clearly indicated by the evidence, but it seems she expended a portion thereof in the maintenance of the family and invested some of it in a parcel of real estate for some of the children. A small farm, owned by her and heavily encumbered, was recently sold by E. D. Marshall, trustee, and produced a sum considerably more than the lien debt for which it was sold. Claiming $800.00 due her from her mother on account of the pension money, so received, Mrs. Mitchell and her husband brought this action and attached the surplus proceeds of sale of the land in the hands of the trustee. For proof of the receipt of the money and the amount thereof, the plaintiffs offered a statement, sworn to before a notary, and filed in some other proceeding, showing the condition of the guardian's account, disclosing the receipt of $853.40 for the female plaintiff in this action, and a claim of credit for all of it but $33.90. As indicated by the court's observations, in ruling upon this evidence, it was rejected, under the impression that, as it showed the money had been received in the capacity of guardian, the enforcement of payment thereof to the ward

is within the exclusive jurisdiction of the equity courts, or, at least not cognizable in *assumpsit*. To sustain the action of the court, the attorney for the defendant in error sets up in his brief misjoinder of parties plaintiff, insisting that, if the evidence proves any right of recovery it is a sole right in the wife and not a joint right of action in her and her husband.

First disposing of the last objection, we hold it untenable, under the rulings in *Normile* v. *Traction Co.,* 57 W. Va. 132, and *Clay et ux* v. *St. Albans,* 43 W. Va. 539, declaring the husband may join the wife as plaintiff in actions, concerning her separate estate. The declaration sets forth no joint right of action, nor any at all in the husband. His joinder is a mere formal matter.

The authorities relied upon for appropriateness of the remedy do not sustain it. In a sense, *assumpsit* is an equitable remedy, but it always sounds in damages, and no authority goes so far as to make it a substitute for remedies in equity. We do not say whether after the termination of the guardianship and settlement of the account, in some proper way, the ward could invoke this remedy against his former guardian. There may be authority for this, but we have been unable to find any, justifying its employment in the absence of a settlement of the account. Between the guardian and ward, there exists a fiduciary relation. It is not one of debtor and creditor. The guardian is the legal custodian of the estate. He has right of possession, though, in equity, the ward is the real owner of the property. This relationship denies application of the ordinary legal remedies, such as *assumpsit* and debt, based upon the theory of a contract between the parties, express or implied, and sounding in damages. The ancient and practically obsolete common law action of account is the only appropriate legal remedy. *Field* v. *Torrey,* 7 V. 373; 1 Bac. Abr. 44. In that, the only issue was liability, not for money but to account. The defendant could plead his willingness to account and confess his liability, or deny that he was ever under any duty to account, or plead that he had rendered a full account or set up a release, a bond given in satisfaction or the statute of limitations, when available. If he failed on an issue so made, judgment in the first instance was not rendered for any sum of money. It was, not that the plaintiff recover, but that the de-

fendant render an account. The judgment was technically known as that of *quod computet*. After the entry thereof the case went to auditors for a settlement of the account, and on the return of their finding judgment was rendered for the amount ascertained by them. 1 Bac. Abr. 43 to 54, inc.; 1 Chitty Pl. (11 Am. Ed.) 488; Andrew's Stephen's Pl. 78 n. The action lay against guardians in socage, bailiffs, receivers, one merchant in favor of another, partner against partner, and perhaps others. It was not in any sense like *assumpsit,* because it did not sound in damages. Chitty says either it or a suit in equity must be resorted to for settlement of partnership accounts, on account of the nature of the situation of the parties and the same reasoning clearly applies in transactions between guardian and ward. Hence, its use between guardian and ward is no precedent for a resort to *assumpsit* or debt by a ward in seeking relief against his guardian. Its counter part was a bill in equity for an accounting, in which proceeding practically the same course is pursued. *Neal* v. *Keel's Exrs.,* 4 T. B. Mon. (Ky.) 162; 1 Chitty Pl. (11 Am. Ed.) 39. That this is the remedy usually pursued in such cases in this jurisdiction is so well known as to require no citation of authority to sustain it. In confirmation of our conclusion that *assumpsit* does not lie, we cite 9 Enc. Pl. & Pr. 949, saying the transactions of guardians are examinable only in a court of equity, or in some other court specially authorized to examine and adjust their accounts; 21 Cyc. 196, 197, saying "The jurisdiction of courts of law over suits by or against guardian or ward depends upon the nature of the suit, and upon the special statutory provisions of the various states relating to jurisdiction. * * * The relation of guardian and ward and the rights and liabilities growing out of it are preculiarly within the jurisdiction of a court of equity"; and Woerner Guard. sec. 46, saying "The necessity of a previous accounting, before there can be an action at law for a recovery on the bond, is held to extend to suits against the principal himself as well as the surety; the ward can bring no action at law against the guardian so long as the relation of guardian and ward subsists." This seems to imply that the ward may maintain an action at law after the termination of the guardianship, but it only means that, until the guardianship ceases, the ward can have nothing

more than a settlement. The same author says, in section 9 t, "That an action at law cannot be brought for a guardian's liability, either against the guardian or his sureties, until there has been an accounting in the court having original jurisdiction of guardians' accounts has been stated in a former chapter."

It is fair to counsel to say he tacitly admits inappropriateness of this remedy within the duration of the guardianship. His contention is that it has terminated by reason of the marriage of the guardian and her removal from the state and the attainment of her majority by the ward. We are unable to perceive how this can make any difference. The manner of the termination of the guardianship cannot, in reason, affect the basis of settlement or the method of obtaining it. Therefore, neither marriage nor removal from the state is important upon this inquiry. Nor can the termination of the guardianship, however effected, do away with rights accrued, or certain relations established, while the guardianship endured. That relationship made the guardian liable to a settlement, upon certain principles and in a certain manner, to be enforced by certain kinds of procedure. These rights vested during the guardianship and have not been changed by the cessation thereof. The termination of the guardianship has given the ward but one single additional right, namely, to have the money paid over to her, after ascertainment of the amount due in the manner prescribed or established for the settlement of the accounts of guardians. For the purposes of settlement, therefore, but for nothing else, the guardianship is deemed to continue, just as a partnership or a corporation continues, after dissolution, for purposes of settlement. This subsequent duration is a mere fiction, of course, but it is necessary for the effectuation of justice and vindication of substantial rights. Of course, the termination of the guardianship puts an end to the power of the guardian to act any further on behalf of the ward. Thereafter he cannot rightfully receive payment of money due the ward and must relinquish control of the latter's property.

For the reasons stated, we are of the opinion that the judgment complained of should be affirmed.

*Affirmed.*