NATIONAL SAVINGS & TRUST CO. v. RYAN et al.

(Court of Appeals of District of Columbia. Submitted October 14, 1919. Decided December 1, 1919.)

No. 3257.

1. APPEAL AND ERROR ⬅254—EXCEPTION UNNECESSARY TO RULINGS WHICH NEED NOT BE INCORPORATED IN BILL OF EXCEPTIONS.

The action of the trial court in sustaining a demurrer to, and striking out, defendant's pleas, may be reviewed without an exception, for an exception is unnecessary, save to rulings which must be brought into the record by a bill of exceptions.

2. TRUSTS ⬅316(1)—TESTAMENTARY TRUSTEES ENTITLED TO COMPENSATION ON TRANSFER FROM THEMSELVES AS EXECUTORS.

Where executors settled their accounts as such, and were ordered to transfer the funds to themselves as trustees, they are entitled to further commissions as trustees.

3. TRUSTS ⬅359(2)—PROCEEDING BY REMAINDERMEN AGAINST TESTAMENTARY TRUSTEES MUST BE BROUGHT IN EQUITY.

A proceeding by remaindermen to require a trustee to turn over certain property to them must be brought in equity, if the trust is still open and the trustee's commissions and some outstanding claims against the estate are undetermined.

4. APPEAL AND ERROR ⬅917(1)—ON APPEAL FROM RULING ON DEMURRER TO PLEAS, THEIR TRUTH ASSUMED.

On appeal from trial court's action in sustaining a demurrer to, and striking out, defendant's pleas, it will be assumed that the statements in such pleas are true.

5. PLEADING ⬅264—PLEAS NOT ABANDONED BY FILING AMENDED PLEA.

Defendant's action in offering an amended plea did not waive or constitute an abandonment of his previous pleas, where the amended plea was not offered as a substitute for them.

6. EXECUTORS AND ADMINISTRATORS ⬅291—EVIDENCE INSUFFICIENT TO SHOW ASSENT OF EXECUTORS TO VESTING ESTATE IN BENEFICIARIES.

The fact that the cestuis que trustent united with an executor in prosecuting a claim does not, as a matter of law, establish the executor's assent to vesting of title in them, but, at most, raises a question of fact.

7. LIMITATION OF ACTIONS ⬅155(6)—TOLLED BY TESTAMENTARY TRUSTEE'S PAYMENTS TO REMAINDERMEN.

A testamentary trustee's payments to plaintiff remaindermen after the life tenant's death tolled the three-year period of limitations prescribed by Code of Law, § 1265, for bringing suit against the trustee's executor.

8. TRUSTS ⬅287—TRUST DOES NOT VEST IN NEW YORK COURTS ON TRUSTEE'S DEATH, WHERE HIS ONLY UNFINISHED DUTY WAS TO ACCOUNT.

Code Civ. Proc. N. Y. 1910, § 2818, providing that a surviving trustee's death vests an unexecuted trust in the New York courts, etc., is inapplicable, where the deceased trustee had nothing further to do, except to account, and an action in such a case may be brought against the trustee's executor.

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the Supreme Court of the District of Columbia.

Action by Joseph M. Ryan and Christine C. Sartor, as executor and executrix of the estate of Theodore A. Sartor, deceased, against the National Savings & Trust Company, as executor of the estate of Charles J. Marc, deceased. Judgment for plaintiffs, and defendant appeals. Reversed, with directions.

James Gillin, of New York City, for appellant.

R. C. Thompson and J. E. Laskey, both of Washington, D. C., for appellees.

SMYTH, Chief Justice. The appellees, Joseph M. Ryan and Christine C. Sartor, in their capacity as executors of the estate of Theodore A. Sartor, deceased, brought action against the appellant, National Savings & Trust Company, as executor of the estate of Charles J. Marc, deceased. The case was tried to a jury, and from a verdict and judgment against it the Savings & Trust Company appeals.

Joseph F. Sartor died in 1897, leaving a will in which he named his mother-in-law, Henrietta M. Rouviere, and Charles J. Marc as executors and trustees of his estate, giving to them "full power and authority to sell, convey, mortgage or lease any or all of the property" of his estate, and "to collect the rents and profits arising therefrom and to invest, reinvest and keep the same invested for the uses and purposes * * * set forth" in the will. He also directed that they pay to his mother-in-law during her life the income and profits arising out of the estate, and that at her death the surviving trustee should pay four legacies, aggregating $20,000, to certain persons and institutions, and then said:

"I hereby give, devise and bequeath all the rest, residue and remainder of my estate, after the aforesaid bequests have been paid, and the aforesaid trust fulfilled to my brother Theodore A. Sartor, his heirs and assigns forever."

Mrs. Rouviere and Marc qualified as executors. Theodore A. Sartor, the beneficiary under the clause just quoted, died in May, 1903, leaving a will which was duly admitted to probate. In it he named Christine C. Sartor, his wife, and Joseph M. Ryan, the appellees, as executors, and said in the second clause:

"I give and bequeath unto my beloved wife Christine Celina Sartor and to my son Joseph Rene Sartor the whole of the proceeds of my brother's (Joseph F. Sartor) estate whatever that may amount to, of which I am residuary legatee. Also all the rest, residue and remainder of my real and personal property, wheresoever situated of which I am possessed, to be by them divided share and share alike, but in the case of my son his share is to be invested and given him on attaining the age of twenty-five (25) years."

The named executors qualified in August, 1903. Mrs. Rouviere died in 1907, leaving Marc as surviving trustee of the estate of Joseph F. Sartor. He died July 5, 1911, without accounting to the remaindermen for the trust fund. The National Savings & Trust Company was designated as sole executor of his estate, and in due time qualified as such.

Some time afterwards Ryan, as executor, Sartor, as executor and legatee, and Joseph Rene Sartor, as legatee of Theodore A. Sartor,

joined in a claim against the estate of Marc for the amount of money which they asserted was due to them under the provisions of the wills of Joseph F. Sartor and Theodore A. Sartor, respectively, which we have quoted. The claim was rejected, and this action followed.

On the petition of Charles J. Marc, his account as acting executor of the will of Joseph F. Sartor (Mrs. Rouviere having neglected to act) was judicially settled and allowed, and it was found that he had in his hands on July 28, 1899, the sum of $59,311.99, out of which he was directed to make certain disbursements, which, when done, left a balance of $58,255.44. The decree further provided that Marc should turn over to himself and Mrs. Rouviere, as testamentary trustees under the will of Joseph F. Sartor, that amount, to be dealt with as provided in the will of Joseph F. Sartor. The appellees gave Marc credit for having paid the four specific legacies designated in the will, and for certain other payments, which brought the amount claimed down to $24,841.35. This sum, they say, should have been paid by Marc to Theodore A. Sartor, his heirs or assigns, under the will of Joseph F.; that, Theodore having predeceased the life tenant, Mrs. Rouviere, they, as executors of his will, were entitled to receive it, and hence their claim against the estate of Marc.

It is urged by the appellant in varying forms that a court of law has no jurisdiction of the case, because, as asserted, an accounting is necessary to fix the amount due from Marc, and where this is true an action at law by cestuis que trustent against the testamentary trustee to recover the trust property cannot be maintained. Appellant filed certain pleas, which were rejected. In one way or another it set up in these pleas that commission was due to Mrs. Rouviere and to Marc as trustees, but that the amount was never determined; that Marc had invested the trust funds, as he was authorized to do under the will, in bonds and mortgages on real estate located in different counties of the state of New York; that in 1902 or 1903 he became a resident of this District, and continued therein until his death in 1911; that he, in the usual course of business, and in the exercise of due and proper care, employed one Gray, a reputable member of the New York bar, to collect from time to time, as they became due, the amounts invested; that Gray did not account to Marc for all the collections which he had made; that he is now asserting a claim of $15,000 for attorney's fees for services rendered to the estate; and that Marc had disbursed all the money of the estate which came into his hands, excepting that which Gray had received and failed to turn over. A demurrer was sustained to five of the pleas, and two were stricken out. No exception was taken to the action of the court. Appellant offered no proof.

[1] Notwithstanding the fact that no exception was taken to the decision of the court just mentioned, we think it is properly here for review. An exception is not necessary, save to a ruling which must be brought into the record by a bill of exceptions. Nalle v. Oyster, 230 U. S. 165, 176, 33 Sup. Ct. 1043, 57 L. Ed. 1439. The ruling before us does not fall within that category.

[2] The writer doubts that the appellees or those whom they rep-

resent stand in the attitude of cestuis que trustent. They are seeking to enforce the right of remaindermen under the will of Theodore A. Sartor. This, it seems, is a legal right. Bergland v. Owen, 48 App. D. C. 26, 34. But none the less, before the amount which Marc's estate is responsible for can be determined, the questions raised by the pleas must be passed upon. Where executors settle their accounts as such, and are ordered to pay the funds in their hands to themselves as trustees, the fund to be managed by them, they are "entitled to further commissions as trustees." In re Willets, 112 N. Y. 289, 296, 19 N. E. 690, 693; Robertson v. De Brulatour, 188 N. Y. 301, 80 N. E. 938; Olcott v. Baldwin, 190 N. Y. 99, 82 N. E. 748. Whether the allegations with respect to Gray are sufficient to exonerate Marc or his estate from responsibility for the fund intrusted to him is a matter upon which we express no opinion. It is, however, with the other questions raised by the pleas, a proper subject for investigation in the light of equitable principles, which must be applied in a court of equity.

[3, 4] Where no ascertainment of the amount due, either by computation, adjustment, or uncontradicted evidence, has been made, "the only remedy for the cestui que trust is by a bill in equity. An action at law does not lie in his favor against the trustee while the trust is open." Davis v. Coburn, 128 Mass. 377, 382. Perry on Trusts and Trustees (6th Ed.) § 843, says:

"Unless some legal debt has been created between the parties, or some engagement, the nonperformance of which may be the subject of damages at law, a court of equity is the only tribunal to which he [the cestui que trust] can have recourse for redress."

In Edwards v. Bates, 7 Man. & G. 590, an action for money had and received by a cestui que trust against a trustee, Tindall, Chief Justice, speaking for the court, denied the right of the plaintiff to maintain the action, because the amount of certain costs and charges which the trustee claimed should be paid out of the fund had not been determined, and said that he (plaintiff) "ought to have filed a bill in equity for an account." "If the trust is still open, the accounts of the trustee unsettled, and the amount going to the particular beneficiary unknown, resort must be had to a court of equity. It is the peculiar province of that court to supervise the execution of trusts, the distribution of trust property and the conduct of trustees in managing trust estates. With all interested persons before it, its decrees protect all interests and enforce all rights." Husted v. Thomson, 158 N. Y. 328, 335, 53 N. E. 20, 21. Other authorities bearing on the same subject are Brown v. Fletcher, 235 U. S. 589, 35 Sup. Ct. 154, 59 L. Ed. 374; Mitchell v. Penny, 66 W. Va. 660, 662, 66 S. E. 1003, 26 L. R. A. (N. S.) 788, 135 Am. St. Rep. 1046; Nelson v. Howard, 5 Md. 327; Herrick v. Snow, 94 Me. 310, 47 Atl. 540; Deering v. Pierce, 149 App. Div. 10, 133 N. Y. Supp. 582, 39 Cyc. 469.

Nothing in conflict with these holdings has been brought to our attention. McLaughlin v. Swann, 18 How. 217, 15 L. Ed. 357, is a case much relied upon by appellees, but it is not in point. There the lower

court charged the jury that, since there was no evidence that "any specified sum ascertained by the accounts of the trustees, or by judicial decision," was due to the plaintiffs, the law court was without jurisdiction. The Supreme Court disapproved this, saying that the "trust was for the payment of specified debts, which should be presented to the trustees before a fixed day. The payments made, and the sums received in execution of the trust, were liquidated sums, ascertained with entire precision. The trust was completely executed, and the balance remaining in the hands of the trustees was a sum certain. Under these circumstances, an action at law for money had and received could be sustained.  *  *  *" But the balance due from Marc or his estate had not been "ascertained with entire precision"; it is not "a sum certain." This distinguishes the case from the one before us.

Neither does Palmer v. Fleming, 1 App. D. C. 528, aid the appellees. It holds that a mere allegation of an equitable ground for relief, without setting forth the facts, is not sufficient to divest the law court of its right to decide the case. We have much more in the present case than a mere allegation of an equitable ground for relief, if the statements in the pleas are true, and we must assume that they are for our present purpose. All the other cases cited by appellees proceed upon the assumption that the trust was closed. Where this is so, an action at law will undoubtedly lie; but the trust we are considering is not closed. It is still open for the purpose of settling the things set up in the pleas. Where this is so, we find no authority for holding that an action at law may be prosecuted. We think the pleas show that the case is one for equitable cognizance, and that the learned court below erred in putting them aside.

[5] The appellant did not abandon these pleas by filing the amended seventh plea, because it was not offered as a substitute for them. If it had been, there would be force to the contention of the appellees that they had been abandoned. "The plaintiff, by filing an amended declaration in lieu of his original declaration, must be treated as having waived all objection to the court's action upon the demurrer to it, and to have been content to stand upon his amended declaration." Birckhead v. Railroad, 95 Va. 648, 649, 29 S. E. 678. But, as we have just seen, nothing of that kind was done here.

Howard v. Railway Co., 11 App. D. C. 300, and Clearwater v. Meredith, 1 Wall. 25, 17 L. Ed. 604, do not help the argument of the appellees. In the first case the question was as to whether or not the defendant had waived his objection to the jurisdiction of the court over his person by moving to set the ruling of the court aside, which was done upon condition that he should plead the general issue. He accepted the condition, and this, says the court, "worked an abandonment of the pleas attacking the jurisdiction and the validity of the service of the writ.  *  *  *" The Clearwater Case, like Birckhead v. Railroad, supra, was one in which a plea was substituted for the rejected one. The court held that by the substitution the party waived his objection to the action of the court in rejecting the first plea.

This disposes of the appeal. There are, however, other matters discussed in the briefs, which will undoubtedly arise upon a new trial, if there should be one, if not ruled upon now, and therefore we decide them.

[6] It is asserted that the appellees have no title to Theodore A. Sartor's interest under the will of Joseph F. Sartor, and, in consequence, have no right to maintain this action. This rests upon the theory that the bequest, which the appellees are seeking to recover, is a specific legacy; that it was the duty of the executors to assent to the vesting of title thereto in the beneficiaries as soon as they had ascertained that the remaining personal property of the testator was sufficient to pay his debts; that this assent may be express or implied, and that there is a presumption that it arose immediately after the expiration of the time fixed by law for the administration of the estate; and that as ten years, lacking one month, have elapsed since the granting of letters testamentary to the appellees, the presumption is conclusive that they gave their assent. It is further urged that the evidence establishes that the appellees expressly assented to the vesting of the title in the cestuis que trustent.

The assent claimed has not been established. During the entire period referred to the appellees were actively urging their rights, as executors, to the fund. They commenced a suit in New York immediately after the death of Henrietta M. Rouviere to recover the fund from Marc. Their right to receive the fund was acknowledged by Marc by his making payments to them from time to time, running down to June, 1910. These payments were made by Gray as attorney for Marc. His authority is denied in argument by the appellant; but it was admitted at the trial that he was Marc's attorney. This admission, it is said, was the result of inadvertence; but the record does not show that to be the fact. Within a year after Marc's death appellees filed a claim against his estate for the amount asserted to be due, and upon that having been rejected they instituted this suit. While the cestuis que trustent united with the executors in the claim, this falls far short of establishing that the latter had assented to the vesting of title in them. They all joined, no doubt, as a matter of precaution. The most that may be said for their action in this connection is that it constitutes, with the other facts disclosed, a question of fact for the tribunal charged with the finding of facts. It certainly did not establish the assent so clearly as to require the court to rule as a matter of law that the assent was given.

With regard to the evidence adduced by the appellees to show the value of the estate of Joseph F. Sartor at the time of the death of the life tenant, we think it was quite sufficient, especially in view of the fact that it was not contradicted.

[7] There is no merit in the argument that this action is barred by the statute of limitations. Mrs. Rouviere, the life tenant, died in 1907. Appellees' cause of action arose then. Marc, as we have seen, made payments from time to time after her death, the last on June 17, 1910. This tolled the running of the statute. Marc died July 5, 1911, and letters testamentary were issued upon his estate September

29, 1911, 2 months and 24 days thereafter. Under section 1266 of the Code, the time between the death of the deceased and the granting of letters testamentary is not to be counted in determining whether or not the statute of limitations has run. This suit was brought July 10, 1913. When we eliminate the 2 months and 24 days, we find that the interval between the last payment and the date on which suit was instituted is less than 3 years, the period of the statute of limitations. Code, § 1265.

Section 348 of the Code says that, if a creditor of an estate shall not within 9 months after his claim has been rejected by the executor or administrator commence suit for recovery, it shall be barred. In this case the executors filed their claim on September 26, 1912; it was rejected October 19, same year, and this action was commenced July 10, 1912, some 9 days less than the period limited.

[8] We do not think that section 2818 of the Code of Civil Procedure of the state of New York applies to this case. It provides in substance that upon the death of a last surviving trustee the trust estate does not descend to his personal representative; but if the trust be unexecuted, in the absence of contrary directions on the part of the person creating the same, it vests in the Supreme Court of the state of New York, and is to be executed by some person appointed by the court. From this it is urged that the trust fund did not come to the appellant as executor of the estate of Marc, and hence the appellant cannot be held liable for Marc's failure to account. To give it the construction urged would be unreasonable. Why appoint a trustee to bring suit against Marc's estate for the benefit of the remaindermen, when they, or those who represent them, are qualified to enforce their own rights? That statute deals only with cases where there is something besides merely accounting for the estate to be done by the trustee. Here the only duty remaining to be performed by Marc at the time of his death was the turning over to the remaindermen of the amount of money for which he was responsible as trustee. That was a duty which he should have discharged many years before, but which remained unexecuted at his death. The theory of the appellees is that, since he was derelict in that respect, his estate is liable, and hence that an action will lie against his personal representative. In this we think they are right.

The judgment must be reversed, at the cost of the appellees, and the case remanded, with directions to the court to transfer it to the equity side of the court, there to be prosecuted as a suit in equity, after the pleadings have been properly recast. Section 274a, Judicial Code (38 Stat. L. 956, c. 90 [Comp. St. § 1251a]); District of Columbia v. Washington Terminal Co., 47 App. D. C. 570, 576; Tuckerman v. Mearns, 49 App. D. C. ——, 262 Fed. 607, this day decided.

Reversed, with directions.